On the evening of May 14th, 1940, at the corner of Iberville and No. Rampart Streets in New Orleans there was a collision between two taxicabs, one of which, owned by V-8 Cab Company, was being operated by Harry Taylor and was protected by insurance issued by Independent Cab Operators Association. The other, a Yellow Cab, was owned by Toye Brothers Yellow Cab Company, a partnership. The Yellow Cab was damaged admittedly to the extent of $51.99 and Paul Sbisa, a passenger in it, sustained personal injuries.
The Yellow Cab Company compromised the claim of Sbisa for $150 taking from him an assignment of all his rights against any other party at fault and then filed this suit against the V-8 Cab Company, Harry Taylor and the Independent Cab Operators Association as the liability insurance carrier of the said V-8 Cab Company, seeking judgment not only for the cost of repairing the damage to the Yellow Cab, $51.99, but also for $150, the amount paid to Sbisa in settlement of his claim.
The Yellow Cab Company alleges that the accident was caused solely by the negligence of Taylor, the operator of the V-8 Cab.
Defendants filed an exception of no cause of action, and at the same time an *Page 515 
answer in which they denied any negligence on the part of Taylor, the operator of the V-8 Cab.
The exception of no cause of action was directed only at that part of the claim of plaintiff which is based on the assignment taken from Sbisa. We find in the record nothing showing any ruling on the exception, but apparently it was overruled. The matter came up for trial on the merits and there was judgment dismissing plaintiff's suit. A new trial was refused and plaintiff has appealed from the judgment.
We shall first consider the exception of no cause of action. It appears to be based on a misinterpretation of the allegations of plaintiff's petition; on the erroneous belief that plaintiff has alleged that the collision was caused by the joint negligence of the two drivers. Exceptor takes the position that if there was negligence on the part of both drivers, the plaintiff, a solidary obligor, having discharged the solidary obligation, may not now claim contribution from the other solidary obligor. Of course, if plaintiff were proceeding on the theory that the drivers were both at fault, then there could be no recovery on that part of the claim. It is well settled that there is no right in one joint tort-feasor to claim contribution from another where the amount paid by the first was paid as a result of a claim asserted only against that one. Sincer v. Bell's Heirs, 47 La.Ann. 1548, 18 So. 755; Aetna Life Insurance Co. v. DeJean, 185 La. 1074,171 So. 450.
It is only where the joint tortfeasors are condemned solidarily in the same judgment that the one who pays or settles the judgment may assert against the other a claim for contribution. Quatray v. Wicker, 178 La. 289, 151 So. 208. Therefore, if in plaintiff's claim there could be found a suggestion that the two drivers were jointly at fault and that, therefore, there was solidary liability in all parties who could have been made defendant, there could be no recovery by plaintiff on that part of the claim which is based on the subrogation taken from Sbisa. There was no suit in which the defendants were condemned solidarily. Therefore, no one of the defendants, after settling with Sbisa, could have any right to claim contribution from any of the others. Surely then, no one of them, merely because of the subrogation from Sbisa, could claim reimbursement in full from any of the others.
But plaintiff's claim under the subrogation from Sbisa is based on another theory altogether. It is not alleged that there was joint negligence. It is charged that only the driver of the V-8 Cab was at fault and that plaintiff is in the same position in which Sbisa would have been had he asserted his claim against the present defendants. Counsel argues that since the present plaintiff is entirely without fault it may, by subrogation, succeed to all of the rights which Sbisa would have been entitled to against the parties actually liable for his damage. And we think that this is true. We therefore pass on to an examination of the facts to determine whether the fault lay with the driver of the V-8 Cab. The
Yellow Cab in which Sbisa was a passenger was being driven down No. Rampart Street from Canal Street towards Esplanade Avenue, and the V-8 Cab was on Iberville Street crossing N. Rampart Street towards the Mississippi River. The Yellow Cab was not in the lane of traffic nearest the neutral ground of N. Rampart Street but, according to its operator, Bordelon, was a little to the right of the center line. Bordelon says that it was being driven at a speed of 10 or 12 miles per hour and that he did not see the V-8 Cab until it was practically in front of his Yellow Cab. This witness insists that the V-8 Cab struck the Yellow Cab, although it is admitted that the damage to the V-8 was at the extreme rear of its right side, whereas the damage to the Yellow Cab was at its left front. Sbisa, the passenger, says that the Yellow Cab was running at about 20 miles per hour as it approached the intersection, but he later changed this statement and said that it might have been going at 30 or even at 35 miles per hour. He did not see the V-8 Cab until it was in front of the Yellow Cab and, he says, that he does not know whether Taylor brought his cab to a stop on the neutral ground before attempting to complete the crossing on N. Rampart Street.
Taylor says that he stopped the V-8 Cab before crossing the lake side of N. Rampart Street; that again he stopped on the *Page 516 
neutral ground and that he sounded his horn. He says that he saw the Yellow Cab as it was coming down N. Rampart Street and that it was "fully half a block" away. According to him there was another car a little ahead of the Yellow Cab and nearer to the neutral ground. He says that when he was stopped on the neutral ground he realized that there was sufficient space for him to pass in front of both this third car and the Yellow Cab, if the drivers of those two cabs recognized the right of way to which he was entitled by reason of his entering the intersection considerably in advance of their cars; that he passed in front of this other car but that the driver of the Yellow Cab did not reduce its speed and struck the V-8 Cab at the rear end of its right side after it was almost across the intersection.
Since the Yellow Cab was a little to the right of the center line of the street and since it struck the extreme rear of the other cab, it is evident that the other car had almost crossed the street before the collision occurred. Since neither Bordelon nor Sbisa saw the V-8 Cab until it was practically in front of the Yellow Cab, neither of these witnesses could contradict the statement of Taylor that he brought his car to a stop and sounded his horn before leaving the neutral ground to cross the river side driveway of N. Rampart Street. Nor can either of these witnesses contradict Taylor's statement that he was able to cross in front of the third car which was a little in front of the Yellow Cab and a little closer to the neutral ground. Since Taylor had sufficient time to cross in front of that other car, surely he could also have passed in front of the Yellow Cab if Bordelon had been attentive for he could easily have stopped or sufficiently reduced the speed of his car to permit the other car, which had entered the intersection first, to continue.
The record shows that after the accident the Yellow Cab travelled a distance of about 50 or 60 feet whereas the V-8 Cab seems to have stopped almost immediately.
We cannot say that the judge a quo was in error in concluding that the accident was caused solely by the negligence of the driver of the Yellow Cab.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.