O’NIELL, Chief Justice.
 

 Hubert L. Roden was killed in a collision with an automobile owned and driven by the defendant, W. T. Bullock. The widow of Roden, for herself and as guardian of her three minor children, brought suit in the United States District Court for the Western District of Louisiana against W. T. Bullock and L. M. Winford for damages for the death of her husband. The cause of action against Bullock was his alleged negligence. The cause for which judgment was asked for against Winford in solido with Bullock was the allegation that Bullock was going on a mission for Winford at the. time of the accident. The amount of the judgment prayed for by the widow was $22,265 for herself and $22,000 for her three children. The item of $265 claimed by the widow was for funeral expenses. The total amount claimed by the widow for herself and as. guardian for her children therefore was $44,265. The United States Fidelity & Guaranty Company being the public liability insurer of Bullock was made a party defendant and judgment was prayed for against the three defendants in solido.
 

 In defense of the suit Winford pleaded that Bullock was not his agent or employee but was driving his own car on a mission for himself at the time of the accident. Bullock in his answer denied that he was. guilty of negligence. On the day fixed for the trial, Bullock and his insurer, the United States Fidelity & Guaranty Company, made a compromise settlement with the widow, agreeing to pay her $5,030 for herself and as guardian of her three children, the $5,000 to be paid by the insurer and the $30 by Bullock as court costs. The widow and guardian in making the compromise reserved her claim against Win-ford. The suit was not formally discontinued against Bullock, but was tried before a jury, and a verdict was rendered against Winford for $17,000, subject to a credit of $5,000' for the amount to be paid by Bullock and his insurer. The verdict therefore, in effect, condemned Winford to pay to the widow for herself and .as guardian, $12,000. The judge gave judgment in accordance with the verdict; that is, he gave judgment against Winford for $17,000 and costs of court, less a deduction of $5,000 to be paid by Bullock or the United States Fidelity & Guaranty Company. The judgment further declared that pursuant to the confession and agreement filed in the suit, by Bullock and the United States Fidelity & Guaranty Company, with Mrs. Roden, she, for herself and as guardian, should recover of the defendants Bullock and the United States Fidelity & Guaranty Company in solido the sum of $5,030.
 

 
 *306
 
 Soon after the judgment was rendered against Winford, and within the time allowed for the taking of an appeal with supersedeas, he compromised the claim of the widow and guardian by paying her $7,-000, in consideration for which she, for herself and as guardian released Winford from any and all claims for damages and from any and all responsibility and liability resulting from the death of her husband father of her children. The compromise settlement was made in writing before a notary public and two witnesses. Winford was represented in the act by the attorney of record who had represented him in the suit in which the judgment for $12,000 was rendered against him, who however does not represent him in the present suit.
 

 In this suit Winford is claiming of and from the defendant Bullock, the $7,000 which he,- Winford, paid to Mrs. Roden, for herself and as guardian of her children, in compromise of the judgment for $12,000 which was rendered against him, Winford. He states his cause of action against Bullock to be that he, Winford, was compelled to pay the $7,000 in order to be rid of the judgment for $12,000 which was rendered against him, and that the cause for which that judgment was rendered against him was the negligence of Bullock in running into and killing the husband of Mrs. Roden.
 

 Bullock pleaded that the petition did not disclose a cause or right of action. The judge overruled the plea. Bullock then pleaded the prescription of one year, averring that the claim for $7,000 was for damages or loss alleged to have been suffered by the plaintiff, Winford, on account of the alleged negligence of the defendant Bullock. The plea of prescription also was overruled. Bullock then filed an answer, reiterating substantially his plea that the plaintiff had no right of action. After a hearing of the case on its merits the judge gave judgment for Winford for the $7,000, with legal interest. Bullock is appealing from the decision.
 

 Winford was not compelled to pay the $7,000 in settlement of the judgment that was rendered against him. He paid • it to avoid the risk of being compelled to pay the whole amount of the judgment, $12,000, and in fact to avoid the risk of having to pay even the much larger sum for which the widow and guardian was suing him, if he should have appealed from thei judgment and if she had filed a cross appeal, or if she alone should have appealed from the judgment. Winford admits in the act of compromise that the only reason for his paying the widow and guardian the $7,000 in compromise and settlement of the judgment, instead of appealing from it, was his fear of being condemned to pay more than $7,000. In the authentic act evidencing the compromise settlement, after a recital of the facts with regard to the accident, the suit by Mrs. Roden, the compromise made by Bullock and his surety on his public liability bond, and the judgment which
 
 *308
 
 was rendered, the following explanation is made:
 

 “That L. M.' Winford has heretofore made arrangements to appeal, with supersedeas, the verdict and decree based thereon in the above described proceeding to the United States Circuit Court of Appeals, Fifth Circuit.
 

 “That each of the Parties hereto [Win-ford and the widow and guardian], balancing the hope of gain against the fear of loss, have agreed to compromise and settle the above mentioned suit on the following basis;
 

 “First Party [the widow] acknowledges receipt (individually and as the guardian and for the use and. benefit of her three minor children above named) from the Second Party [Winford] of the sum of $7,000, in consideration of which First Party, individually and as guardian of her three minor children above named, releases Second Party from any .and all claims for damages of any nature or kind whatsoever, and from any and all responsibility and liability resulting from the death of Hubert L. Roden, and from the cause and right of action asserted in the above numbered and entitled proceeding, including but not limited to the cause and right of action arising under Article 2315 of the Louisiana Civil Code.
 

 “It is understood that this document is intended to operate as a complete release to L. M. Winford by First Party, individually and as guardian of her three minor children above named, from' any and all responsibility and liability whatsoever to-First Party, individually and as guardian of her three minor children above named, resulting from the death of Hubert L. Roden,, as well as from any and all claims, causes, or rights of action asserted in the proceeding above listed.
 

 “It is further understood that this is a-, compromise of a disputed claim, and that L.. M. Winford denies all responsibility and liability to First Party, individually, and as-guardian of her three minor children above-named.
 

 “As a further consideration for this compromise, L. M. Winford agrees not to appeal from the judgment and decree rendered in the proceeding above described,, and Mrs. Ada V. Roden, individually and-as guardian of her three minor children-above named, also agrees not to appeal from the said judgment and decree; which-said judgment and decree is compromised for $7,000 by virtue of this agreement.”
 

 This authentic act, evidencing the compromise, on which' this suit is founded, is annexed to and made part of Winford’s petition.
 

 This is not a case where the concurrent negligence or fault of two or more tort feasors has caused damage to a third person and where one of the joint tort feasors has paid the amount of the damages and sues to compel the other or others to
 
 *310
 
 contribute his or their proportion of the amount paid. The general rule is that where one of several joint tort feasors pays the amount of the damages caused by their concurrent negligence he has no right of action against the other tort feasor or tort feasors for contribution of his or their proportion of the amount paid, unless the amount paid was first reduced to a final judgment against the tort feasors in solido. Sincer v. Heirs of Bell, 47 La.Ann. 1548, 18 So. 755; Quatray v. Wicker, 178 La. 289, 151 So. 208; Aetna Life Insurance Co. v. De Jean, 185 La. 1074, 171 So. 450; Toye Bros. Yellow Cab Co. v. V-8 Cab Co., Orleans Court of Appeal, 18 So. 2d 514.
 

 In Quatray v. Wicker the judgment for the amount of the damages was rendered against Wicker and Marchesseau in solido on account of personal injuries to a third party caused by the joint negligence of Wicker’s minor son and Marchesseau. The accident was a collision between a truck owned by Wicker and being driven by his minor son and an automobile owned and driven by Marchesseau at the time of the collision. When the judgment rendered by the Court'of Appeal against Wicker and Marchesseau in solido became final the insurer of Wicker’s truck paid the injured party, Quatray, the amount of the judgment and took an assignment and subrogation of the rights which the injured party had against Wicker and Marchesseau, or either of them, and then proceeded against Marchesseau to compel contribution of one-half of the amount of the judgment. Some doubt seems to have arisen as to the meaning and effect of the following paragraph in the opinion rendered in that case [178 La. 289, 151 So. 212]:
 

 “Counsel for the appellant contend that Harry F. Marchesseau’s liability should be deemed greater than that of Michael Wicker because Marchesseau’s liability resulted from his own negligence and Michel Wicker’s liability resulted from the negligence of his minor son, for whom he is answerable. But the fact is that the extent, of the liability of Marchesseau and Wicker, relatively, is fixed definitely by the decree of the Court of Appeal, and the cause or origin of the liability of each of them is therefore a matter ‘of no importance now.”
 

 What was said in that paragraph was appropriate to the facts of that case,. but it has nothing to do with a case in which one of the defendants in the suit for, damages is not charged with negligence but is charged with being answerable for the negligence of the other defendant. The claim made and allowed in Quatray v. Wicker was for contribution of one-half of the amount of the judgment by one of the two parties against whom the judgment was rendered in solido. The claim made in the present case is for reimbursement of the whole amount of the judgment rendered only against the party who- is claiming the reimbursement.
 

 
 *312
 
 In the present case there is no judgment against the defendant Bullock for the $7,000 which Winford is seeking to recover from Bullock. Winford is not claiming contribution from Bullock of a proportion of the amount of damages paid by Winford for a tort committed by him and Bullock jointly, or resulting fiom concurrent negligence on their part. Winford is suing for reimbursement of the whole, $7,-000 which he paid, and he bases his claim upon the theory that Bullock, being the only one of them whose fault or negligence caused the damage, was liable primarily for all of the resulting damages. If Win-ford, in his answer to the suit of the widow and guardian in the Federal Court, had prayed, in the alternative, for a judgment over and against Bullock in the event of a judgment being rendered against Win-ford — or if he had appealed from the verdict and judgment rendered against him in the Federal Court and had lost his appeal —his claim against Bullock for reimbursement of the amount of the final judgment rendered against him, Winford, would be supported by the decisions in the following cases: Sutton v. Champagne, 141 La. 469, 75 So. 209; Appalachian Corporation, Inc., v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539; American Employers Ins. Co.
 
 v.
 
 Gulf States Utilities Co., La.App. 4 So.2d 628; Fuller Co. v. Otis Elevator Co., 245 U.S. 489, 38 S.Ct. 180, 62 L.Ed. 422; 27 Am.Jur. 467-469, secs. 18 and 19. That doctrine, however, applies only where the party claiming reimbursement for the amount which he has paid by reason of the negligence or wrongful act of another was compelled by a final judgment to pay the damages for the negligence or wrongful act of the one for whose negligence the party who paid the judgment was answerable.
 

 The feature of this case which distinguishes it from the cases which we have cited is that in this case the plaintiff, Win-ford, was not compelled to pay the $7,000. He paid it in preference to appealing from the judgment and because of his fear of being condemned to pay a larger sum if he appealed and if the widow and guardian filed a cross appeal, or if she alone appealed from the judgment.
 

 We must remember that Winford did not become subrogated — and. djoes mot claim to have been subrogated — to any claim of the widow and guardian against Bullock when Winford paid the $7,000 to her in settlement of her claim against him. When that payment was made Winford knew that Bullock had discharged his obligation to the widow and guardian by paying her $5,-030 in full settlement for any and all liability to her and to her children, on his part. Winford’s claim against Bullock therefore rests entirely upon Winford’s complaint that Bullock’s negligence was the cause of Winford’s being compelled to pay the widow and guardian the $7,000 in settlement of her claim against him, Winford.
 

 
 *314
 
 To hold that Bullock must pay Winford the $7,000 merely because Winford was willing to pay that amount in preference to taking an appeal from the judgment against him would be to hold that Bullock would have been obliged to pay any amount that Winford might have consented to pay— not exceeding the total amount claimed by the widow and guardian — in preference to appealing from the judgment against him. Either that is true or else we must decide in this case whether it was wise or unwise for Winford to pay as much as $7,000 in settlement of the claim of the widow and guardian against him, in preference to appealing from the judgment of $12,000. To decide that question would be to balance Winford’s hope of gain against his fear of loss; which would be to decide the case according to the probabilities — or according to Winford’s prospect of winning or losing the case if he had appealed. When he decided the matter for himself and without consulting Bullock, he, Winford, assumed the responsibility.
 

 In this case the plaintiff, Winford, did not offer to prove or even allege that $7,-000 was a reasonable sum for him to pay for being relieved of all further liability to the widow and guardian. That is really not susceptible of proof in this case.
 

 Our conclusion is that Winford has no right of action against Bullock.
 

 This conclusion makes it unnecessary to consider Bullock’s plea of prescription.
 

 The judgment is annulled and reversed and the plaintiff’s demand is rejected and his suit dismissed at his cost.
 

 HAMITER, J., concurs in the decree.
 

 FOURNET and HAWTHORNE, JJ., take no part.